IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN S. MILLER,<br>　　　　　Plaintiff,<br><br>　　　　v.<br><br>FAYETTE COUNTY, VINCE ZAPOTOSKY, ANGELA M. ZIMMERLINK, GARY D. BROWNFIELD, SR., and JEANINE WRONA,<br>　　　　　Defendants. | 2:15-cv-1590 |

### MEMORANDUM OPINION

Pending before the Court is DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6) (ECF No. 10), along with a brief in support (ECF No. 11), filed by Fayette County, Vince Zapotosky, Angela M. Zimmerlink, Gary D. Brownfield, Sr., and Jeanine Wrona. Plaintiff filed a BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT (ECF No. 16). Defendants filed a reply brief (ECF No. 23). Accordingly, the motion is ripe for disposition.

**I.　Background**

Plaintiff is the warden of the Fayette County Prison. At all relevant times, Zapotosky and Zimmerlink were Fayette County commissioners; Brownfield was the sheriff of Fayette County; and Wrona was the acting controller of Fayette County. Each of the Defendants was also a member of the Prison Board of Inspectors, which oversees the operation of the prison.

Fayette County Commissioner Alfred Ambrosini first approached Plaintiff about the possibility of building a new prison in 2012. Sometime thereafter, Plaintiff and various other civic leaders "joined the Prison Working Group ('Group'), which was formed for the purpose of making suggestions for the proper completion of the project." *Id.* ¶ 12. The Group met monthly,

1

starting in July 2013, to discuss the "cost of construction and management, architectural design, engineering services and staffing requirements" of the proposed facility. *Id.* ¶ 13.

"The decision to build the new facility was a highly politically charged issue, with significant numbers of the general public split on whether or not to authorize this large expenditure of taxpayer funds." *Id.* ¶ 14. Zapotosky and Zimmerlink "strongly opposed" the project and "repeatedly made statements to local media outlets detailing their opposition . . . as a waste of taxpayer dollars." *Id.* ¶ 15. The other Defendants also opposed the project, though apparently less vociferously. *Id.* ¶ 29. Plaintiff, on other hand, supported the idea, and his support, "as well as his alliance with Commissioner Ambrosini and the Group regarding this issue, was known to all Defendants and the public at large." *Id.* ¶ 16.

On December 19, 2014, Zapotosky and Zimmerlink removed Plaintiff from a Group meeting to discuss an unrelated matter. At the end of their discussion, one (or both) of them "told the Plaintiff that the new prison 'would never be built.'" *Id.* ¶ 18. Plaintiff responded by saying that he wanted no part in Defendants' "political games." *Id.* ¶ 19.

Within the next few days, two assaults took place at the prison. Plaintiff was not on duty when either occurred, but members of his staff contacted the Uniontown Police Department to investigate the incidents. On January 8, 2015, Zapotosky, acting on behalf of the Prison Board of Inspectors, instructed Fayette County's Human Resources Director, Dominick Carnicella, to investigate whether Plaintiff failed to comply with any county policies regarding assaults. That same day, Carnicella notified Plaintiff that he was under investigation for failing to immediately notify the Board of Inspectors about the incidents, which was said to have violated Board of Inspectors' policy. According to Plaintiff, however, there was no such policy at the time. Carnicella began his investigation on January 9, 2015, and concluded it that same day, after

having determined that "no report to the Board had been generated, that Uniontown police had been dispatched to the prison to investigate the assaults and that Plaintiff had contacted Defendant Zapotosky, Defendant Brownfield and Commissioner Ambrosini regarding Fayette County Prison's response to the incidents." *Id.* ¶ 24.

On January 12, 2015, the Board of Inspectors held a hearing to decide Plaintiff's fate for the alleged policy violation. Plaintiff alleges that Zapotosky ordered him to the leave the meeting before the Board voted on his punishment, which "was against Board policy, and prevented Plaintiff from presenting his own defense." *Id.* The Board eventually voted, 4-2, to suspend Plaintiff without pay for three days, with each of the Defendants voting in favor of the suspension and Commissioner Ambrosini and District Attorney Jack R. Heneks, Jr., voting against it. Plaintiff claims "that Defendants were partially motivated to act in conspiracy with each other to suspend Plaintiff from his position as warden by Plaintiff's political affiliation with the Group" inasmuch as they all opposed building the new prison, while Plaintiff supported it *Id.* ¶ 29. Plaintiff alleges that there were personal reasons at play, too. In particular, he claims that Zapotosky wanted to replace Plaintiff with his "favored deputy warden," who would then allow the prison's physician, Dr. Dominic Dileo, to prescribe methadone to inmates – something that Plaintiff had prohibited Dr. Dileo from doing. This arrangement would, in turn, allegedly redound to the pecuniary benefit of Dr. Dileo "and/or" Zapotosky. *Id.* ¶ 34. Plaintiff also claims that Brownfield "intended to remove Plaintiff from his position as warden in part so that [his] son," who works as a lieutenant at the prison, "could assume the office." *Id.* ¶ 36.

Plaintiff served his suspension from January 13, 2015, through January 15, 2015, and returned to work the next day. In February 2015, Plaintiff was interviewed at the Board of Inspectors' monthly meeting, at which time Carnicella determined that Plaintiff had not, in fact,

committed any wrongdoing. It also came to light that the Board of Inspectors did not actually have a policy that mandated the reporting of incidents of the type that had occurred. Subsequently, the solicitor of the Fayette County Controller's Office conducted an investigation and determined that Plaintiff had not committed any violations of county policy. As a result, in late March 2015, the Board of Inspectors voted to reverse Plaintiff's suspension and restore his pay. His suspension was expunged from his record on June 10, 2015, and he received the back pay he was owed on July 3, 2015.

Before Plaintiff's record was expunged, however, Zimmerlink attended a United Mineworkers meeting as part of her reelection campaign. During the meeting, she "announced that the 'warden and deputy warden need to be fired for the prison to run properly.'" *Id.* ¶ 41.

Plaintiff filed this suit on December 4, 2015. Plaintiff alleges four counts under 42 U.S.C. § 1983: (1) First amendment retaliation based on political affiliation, (2) procedural due process, (3) conspiracy, and (4) municipal liability. He also raises a state-law claim for slander *per se*.

## II. Legal Standard

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard "does not impose a probability requirement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). However, a pleading must show "more than a sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678.

To determine the legal sufficiency of a complaint, the Court must engage in a three-step inquiry. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court must

take note of the elements that Plaintiff must plead to state a claim. *Id.* Second, the Court must "identify those allegations that, being merely conclusory, are not entitled to the presumption of truth." *Connelly*, 809 F.3d at 789. Third, the Court must assume that the remaining allegations are true "'and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). In making this determination, the Court must construe the facts in the light most favorable to the plaintiff and "draw all reasonable inferences from them." *Id.*

## III. Discussion

Defendants move to dismiss each of Plaintiff's federal claims, as well as his state-law claim for slander *per se*. These claims will be addressed *seriatim*.

### A. Political Affiliation Retaliation

Under the First Amendment, a non-policymaking public employee cannot be terminated because of his political affiliation. *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing *Elrod v. Burns*, 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980)). This rule not only protects public employees "from politically motivated discharge, but also from promotion, transfer, recalls, and other hiring decisions conditioned on political affiliation[.]'" *Id.* (citing *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 64 (1990)). Other "'less harsh,' politically-based discipline is also prohibited."[1] *Fletcher v. Szostkiewicz*, 190 F. Supp. 2d 217, 225 (D. Mass. 2002). To make out a *prima facie* case, the plaintiff "must show that (1) [he] was employed at a public agency in a position that does not require political affiliation, (2) [he] was engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in the government's employment decision." *Galli*, 490 F.3d at 271 (citing

---

1. The Court is somewhat skeptical whether Plaintiff's three-day suspension was sufficiently adverse to be actionable since it was eventually expunged from his record and his pay was fully restored. But Defendants have not challenged this element of the *prima facie* case.

5

*Stephens v. Kerrigan*, 122 F.3d 171, 176 (3d Cir. 1997)). If the plaintiff makes this showing, the defendant "may 'avoid a finding of liability by proving by a preponderance of the evidence that the same employment action would have been taken even in the absence of the protected activity.'" *Id.* (quoting *Stephens*, 122 F.3d at 176).

Defendants argue that Plaintiff cannot establish a *prima facie* case because he failed to identify "any political affiliation that was the basis for Defendants' retaliation against him." Defs.' Br. at 5. The Court disagrees. Courts have broadly interpreted the phrase "political affiliation." As Defendant concedes, it is not limited to party membership. Even though the early cases "concerned membership in different political parties, the underlying rationale has been understood . . . to apply to any political difference[.]" *Smith v. Sushka*, 117 F.3d 965, 970 n.6 (6th Cir. 1997) (citing *McCloud v. Testa*, 97 F.3d 1536, 1548 (6th Cir. 1996)); *see also Barry v. Moran*, 661 F.3d 696, 704 (1st Cir. 2011) (explaining that "the term 'political,' in the relevant First Amendment sense, pertains to the conduct of government, public policy or public controversies"). Thus, if someone is disciplined or terminated for his or her support of "a candidate or a cause or a political position on a petition or referendum," that person's First Amendment rights have been violated. *Aiellos v. Zisa*, No. CIV.A. 09-3076, 2009 WL 3424190, at *7 (D.N.J. Oct. 20, 2009). Under this reasoning, Plaintiff's affiliation with the Prison Working Group and his alliance with Commissioner Ambrosini on the prison project were sufficiently political to warrant protection by the First Amendment.

Moreover, accepting Plaintiff's allegations as true, he has plausibly alleged that he was suspended based on that affiliation. According to Plaintiff, Defendants were aware of his affiliation with the Group and his alliance with Commissioner Ambrosini and disagreed with his views on the hot-button issue of whether a new prison should be built. Then his suspension came

right in the midst of the political wrangling over this issue. Add to that the fact that Defendants voted to suspend Plaintiff based on a policy that was later proven not to exist, without giving him the chance to dispute the allegations against him, and it could inferred that Defendants' actions were pretextual – i.e., that they "were uninterested in the truth of the controversy" and simply using it as a cover for the real reason for suspending Plaintiff, which was his affiliation with the Group and Ambrosini, along with his support for the prison project. *See Acosta-Orozco v. Rodriguez-de-Rivera*, 132 F.3d 97, 102 (1st Cir. 1997) (finding that failure to afford plaintiffs a hearing to contest adverse employment action was suggestive of pretext). While Defendants contend that it is "pure speculation" on Plaintiff's part that they voted to suspend him for political reasons, Plaintiff has pled enough facts to proceed to discovery on his claim. Accordingly, Defendant's motion will be denied as to Count I.[2]

### B. Procedural Due Process

Plaintiff concedes that he failed to adequately plead a procedural due process violation in his original complaint because he does not have a protected property interest in his position as warden. In view of that, simultaneous with the filing of his brief in opposition to Defendants' motion, Plaintiff filed a motion to amend his complaint, along with a proposed amended

---

2. Defendants also argue that Plaintiff has pled himself out of court by alleging that Defendants voted to suspend him for personal reasons, in addition to political reasons. To be sure, "'back-scratching, log-rolling, horse-trading, institutional politics, envy, nepotism, [and] spite' are not illegal motivations for employment decisions." *Barry v. Moran*, 661 F.3d 696, 708 (1st Cir. 2011) (quoting *Stratton v. Dep't for the Aging for City of N.Y.*, 132 F.3d 869, 880 (2d Cir. 1997)). So insofar as Defendants may have been primarily motivated to suspend Plaintiff for the personal reasons mentioned in the complaint – Zapotosky's alleged desire to make room for his "favored deputy warden" and Brownfield's alleged desire to replace Plaintiff with his son – their conduct would not have violated the First Amendment. Nevertheless, the Court does not find that this is an appropriate basis for dismissing Plaintiff's complaint. To survive a motion to dismiss, Plaintiff need only plausibly allege that his political affiliation played "a substantial or motivating factor" in the decision to suspend him; he need not plead and prove that it was the only reason. Viewing the facts in the light most favorable to him, he has done so, irrespective of whether he has also suggested that other factors played a role.

complaint, in which he attempts to overcome the deficiencies Defendants have identified. From Defendants' perspective, however, Plaintiff has not succeeded in doing so.

To decide whether Plaintiff should be allowed to file his proposed amended complaint, the Court must consider whether it would survive a motion to dismiss for failure to state a claim. Otherwise, granting leave to amend would be futile. *See Celec v. Edinboro Univ.*, No. 1: 15-CV-2, 2015 WL 5553728, at *11 (W.D. Pa. Sept. 18, 2015).

With a few exceptions, Plaintiff's proposed amended complaint is identical to the original. Namely, while the original complaint only included a procedural due process claim, the amended complaint includes purportedly independent claims for violations of procedural due process and substantive due process. With regard to the former, Plaintiff has replaced the allegations regarding his protected interest in his position as warden with the following two paragraphs:

> Defendants excluded Plaintiff from being heard at the Board of Prison Inspectors' meeting on January 12, 2015, in order to deprive Plaintiff of [his] right to freedom of association as guaranteed to him by the First Amendment to the United States Constitution.
>
> Defendants deprived Plaintiff of his constitutionally protected right to procedural due process when they denied Plaintiff his right to be heard at the Board of Inspectors' meeting on January 12, 2015.

Proposed Am. Compl. ¶¶ 68-69. With regard to the latter, Plaintiff alleges, in pertinent part, the following:

> After the Defendants' decision to unjustly suspend the Plaintiff, the Defendants publicized the false statement that Plaintiff engaged in misconduct for failing to report inmate assaults in violation of Prison Board of Inspectors policy.
>
> As a result of the actions of the Defendants, a stigma has been placed on Plaintiff's reputation.
>
> In addition, Plaintiff was deprived of his right to freedom of association guaranteed to him by the First Amendment to the United States Constitution, as

> the Defendants were acting in retaliation for Plaintiff's association with the Group and his support of the prison construction project.

*Id.* ¶¶ 76-78.

Because addressing the sufficiency of these proposed allegations, one thing needs to be clarified. Although Plaintiff has labelled his new stigma-plus claim a "substantive due process" claim, stigma-plus is actually "a species within the phylum of procedural due process claims," *Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir. 2006), not a variation of substantive due process, *see Plude v. Adams*, No. 3:12CV69 AWT, 2013 WL 943730, at *4 (D. Conn. Mar. 11, 2013) (dismissing substantive due process claim as duplicative of stigma-plus claim). Consequently, the Court will only consider whether the proposed amended complaint adequately pleads a procedural due process violation in either Count II or Count III. To state a procedural due process claim, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

Count II of the proposed amended complaint requires little discussion. Plaintiff alleges that he was deprived of a protected liberty interest in his First Amendment right to freedom of association. However, insofar as this claim "would effectively duplicate" Plaintiff's First Amendment claim in Count I, it "is redundant" and thus fails to state a claim. *Decker v. Borough of Hughestown*, No. CIV. A. 3:09-CV-1463, 2009 WL 4406142, at *5 (M.D. Pa. Nov. 25, 2009).

Turning now to Plaintiff's proposed stigma-plus claim, an individual's interest in his reputation is not, by itself, protected by the Fourteenth Amendment. *Dee v. Borough of Dunmore*, 549 F.3d 225, 233 (3d Cir. 2008) (quoting *Clark v. Twp. of Falls*, 890 F.2d 611, 619

(3d Cir. 1993)). "Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." *Hill*, 455 F.3d at 236.

In opposing Plaintiff's motion to amend, Defendants argue that Plaintiff cannot satisfy the "plus" element because he was not terminated from his position. Defendants' argument would be correct if Plaintiff were alleging a typical "stigma-plus" claim, in which the "plus" is the termination of public employment and the "stigma" stemmed from false statements leveled against the plaintiff as he was being terminated. *See, e.g.*, *Edwards v. Cal. Univ. of Pa.*, 156 F.3d 488, 492 (3d Cir. 1998) (holding that "temporary removal from [teaching] duties" did "not constitute a deprivation of employment"). But that is not exactly what Plaintiff is alleging. Instead, he claims that the "plus element . . . was the deprivation of his First Amendment right to freedom of association." Pls.' Br. at 7-8. The Court of Appeals has never fully fleshed out "what types of interests are sufficiently 'tangible' to satisfy the 'plus' element[.]'" *Good v. City of Sunbury*, 352 F. App'x 688, 691 (3d Cir. 2009). In theory, though, Plaintiff's claimed deprivation might be sufficient, as the Court of Appeals has "found a sufficiently tangible 'plus' when the claimed harm was 'an injury to [plaintiff's] reputation while in the exercise of [her] constitutional right' to free speech." *Id.* (quoting *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 797 (3d Cir. 2000)).

Assuming that the "plus" element is met, Plaintiff nevertheless fails to satisfy the "stigma" prong. This prong requires him to prove that the Defendant(s) published a "substantially and materially false statement that" infringed on his "'reputation, honor, or integrity.'" *Brown v. Montgomery Cnty.*, 470 F. App'x 87, 91 (3d Cir. 2012) (quoting *Ersek v. Springfield*, 102 F.3d 79, 83-84 (3d Cir. 1996)). The statement here − "that Plaintiff engaged in

misconduct for failing to report inmate assaults in violation of Prison Board of Inspectors policy" – is not sufficiently stigmatizing to satisfy this requirement. *See id.* (quoting *Mercer v. Cedar Rapids*, 308 F.3d 840, 845-46 (8th Cir. 2002)) ("'[N]o liberty interest of constitutional significance is implicated when 'the [defendant] has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance.'"); *Sullivan v. Stark*, 808 F.2d 737, 739 (10th Cir. 1987) (holding that statement that plaintiff "was negligent or derelict in performing the duties of a park ranger . . . do not implicate concerns of constitutional stature").

To summarize, Count II of the complaint will be dismissed for failure to state a claim since, as Plaintiff concedes, he lacked a protected property interest in his position as warden. And because allowing Plaintiff to file his proposed amended complaint would be futile for the reasons set forth above, his motion to amend will be denied.

**C.** **Conspiracy**

"'A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act[.]" *Holt Cargo Sys., Inc. v. Del. River Port Auth.*, 20 F. Supp. 2d 803, 843 (E.D. Pa. 1998) (quoting *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995)). In other words, in a § 1983 case "the function of conspiracy doctrine is merely to yoke particular individuals to the specific torts charged in the complaint." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred" or "'plausible grounds to infer an agreement.'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556). It is not enough to allege "parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557. Moreover, "[o]nly allegations of conspiracy

which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient." *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989).

Plaintiff's allegations of conspiracy in paragraphs 28 and 29 and paragraphs 73 through 77 are nothing more than legal conclusions. When these allegations are cast aside, the remaining allegations, even accepted as true, do not allow the Court to infer that Defendants entered into an agreement to violate Plaintiff's constitutional rights prior to voting on his suspension. Thus, Count III will be dismissed.[3]

### D. Municipal Liability

Defendants argue that the claim against Fayette County should be dismissed because Plaintiff has failed to identify a municipal policy or custom that caused his injury. "[A] municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). However, liability may be imposed if the municipality "itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, --- U.S. ----, 131 S. Ct. 1350, 1359

---

3. In any event, this claim is superfluous. As already noted, "[t]he doctrine of civil conspiracy extends liability for tort, here the deprivation of constitutional rights, to persons other than the actual wrongdoer[.]" *Hostrop v. Bd. of Jr. Coll. Dist. No. 515, Cook & Will Counties & State of Ill.*, 523 F.2d 569, 576 (7th Cir. 1975). For example, even though A did not commit the act that actually caused a plaintiff's injury, he may nonetheless be held liable if he conspired with B to do so. Still, "it is the acts causing damage to the plaintiff that give rise to liability for damages, not the conspiracy itself." *Id.* Plaintiff has pled one underlying violation of his First Amendment rights and alleges that each of the conspirators was directly involved in it, so "[t]he conspiracy count . . . adds nothing to the substantive count." *Id.* "Put differently, Defendants cannot be held liable under § 1983 for conspiring to violate [plaintiff's] [First Amendment] rights unless they actually violated [those] rights; but if they actually violated [his] rights, then the conspiracy charge adds nothing to the case or to [plaintiff's] potential recovery, as § 1983 plaintiffs may recover only once for each injury." *Id.* (citing *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 311–13 (7th Cir. 2010)). So even if Plaintiff had pled more than barebones allegations in support of his conspiracy claim, the Court would be inclined to dismiss it.

(quoting *Monell*, 436 U.S. at 692). Thus, "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* (quoting *Monell*, 436 U.S. at 691). As the Third Circuit Court of Appeals has explained,

> [a]n individual's conduct implements official policy or practices under several types of circumstances, including when (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred.

*Hill*, 455 F.3d at 245 (citations omitted).

Plaintiff's position is that the County can be held liable under the second method because the Defendants "sat on the Board of Prison Inspectors and, as such held final policy-making authority regarding the decisions of that body."[4] Pls.' Br. at 10. The Court agrees that this is plausible. Ultimately, Plaintiff will have to prove that Defendants were "responsible for making policy" in the particular area involved in this lawsuit (meting out discipline to prison employees) and that their authority was "final and unreviewable." *Hill*, 455 F.3d at 245 (internal citations omitted). At this juncture, however, his allegations are sufficient to state a claim against the County. *See Rinehart v. Mt. Penn Borough Mun. Auth.*, No. CIV.A. 01-5628, 2002 WL 32341795, at *9 (E.D. Pa. Dec. 19, 2002) (holding that "the binding vote of the Authority's governing Board of Directors was a decision or policy of the Authority itself, and if it violated the plaintiff's constitutional rights, then the Authority itself can be held liable along with the individual members of the Board").

---

4. While the complaint also contains the boilerplate allegation that Fayette County failed to "properly train, control, discipline and/or supervise" the Defendants, Plaintiff appears to have abandoned this claim, as he had not advanced any argument with regard to it in his brief.

### E.   Slander *Per Se*

Defendants contend that Plaintiff's slander *per se* claim should be dismissed because Zimmerlink's alleged statement was an opinion that cannot be construed as having a defamatory meaning. "Under Pennsylvania law, the court must decide at the outset whether a statement is capable of defamatory meaning." *Tucker v. Fischbein*, 237 F.3d 275, 281 (3d Cir. 2001) (citation omitted). A statement is defamatory "if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Balletta v. Spadoni*, 47 A.3d 183, 197 (Pa. Commw. Ct. 2012) (citing *MacElree v. Phila. Newspapers, Inc.*, 674 A.2d 1050, 1054 (1996)). Generally, "only statements of fact, rather than mere expressions of opinion, are actionable," *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010), because there is "no such thing as a false opinion in a free society[,]" *Baker v. Lafayette Coll.*, 504 A.2d 247, 252 (Pa. Super. Ct. 1986). A statement of opinion may be actionable, however, if it can "'reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion.'" *Remick v. Manfredy*, 238 F.3d 248, 261 (3d Cir. 2001) (quoting *Baker*, 532 A.2d at 402).

Zimmerlink's alleged statement – "that the 'warden and deputy warden need to be fired for the prison to run properly,'" Compl. ¶ 41 – cannot be so understood. Context matters, especially "when the surrounding circumstances of a statement are those of a heated political debate, where certain remarks are necessarily understood as ridicule or vituperation, or both, but not as descriptive of factual matters." *Koch v. Goldway*, 817 F.2d 507, 509 (9th Cir. 1987). When considered in context, it is clear that Zimmerlink was merely expressing her subjective belief about the operation of the prison and what needed to be done to improve it – something she had every right to do while on the campaign trail seeking reelection to an office ultimately

14

responsible for the operation of the prison. Indeed, even if, as Plaintiff contends, the "obvious implication . . . was that Plaintiff was not operating the prison properly[,]" the statement would still amount to pure opinion that cannot form the basis of a defamation claim. Therefore, Count V will be dismissed.

### F. Punitive Damages

Finally, Defendants ask the Court to dismiss Plaintiff's request for punitive damages. Punitive damages are not recoverable from a municipality under § 1983 or from individual defendants sued in their official capacities. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). A public official may, however, be liable for punitive damages in his individual capacity if his or her conduct was "reckless, callous, intentional or malicious." *Springer v. Henry*, 435 F.3d 268, 281 (3d Cir. 2006). This is a high bar, but it is too early to say, as a matter of law, that Plaintiff will not be able to overcome it. In the least, Plaintiff has pled a plausible basis for inferring that Defendants acted recklessly or callously in disregard of his First Amendment rights. Thus, Defendants' motion to dismiss Plaintiff's request for punitive damages will be denied.

## IV. Conclusion

For the reasons hereinabove stated, Defendant's motion to dismiss will be granted in part and denied in part, and Plaintiff's motion to file an amended complaint will be denied. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIAN S. MILLER,
    Plaintiff,

v.

FAYETTE COUNTY, VINCE ZAPOTOSKY, ANGELA M. ZIMMERLINK, GARY D. BROWNFIELD, SR., and JEANINE WRONA,
    Defendants.

)
)
)
)
) 2:15-cv-1590
)
)
)
)
)
)
)

## ORDER OF COURT

AND NOW, this 18th day of April, 2016, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6) (ECF No. 10) is **GRANTED**, as to Count II (procedural due process), Count III (conspiracy), and Count V (slander *per se*), and **DENIED** in all other respects.

It is **FURTHER ORDERED** that Plaintiffs' MOTION TO AMEND COMPLAINT (ECF No. 17) is **DENIED**.

Defendants shall file an answer **on or before May 2, 2016**. The parties shall confer as necessary and file with the Court the Stipulation Selecting ADR Process and the Rule 26(f) Report **on or before May 30, 2016**. The Initial Case Management Conference is hereby scheduled **on June 24, 2016, at 10:00 a.m.** in Courtroom 6C.

            BY THE COURT:
            s/Terrence F. McVerry
            Senior United States District Judge

cc: all counsel of record (via CM/ECF)